IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRYAN SANTOS PAZ,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)　　Case No. 1:26-cv-165 (RDA/WEF)
　　　　　　　　　　　　　　　　　　　)
PAMELA BONDI, *et al.*,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Respondents.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

## ORDER

On January 19, 2026, Petitioner Bryan Santos Paz ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, seeking release from Immigration and Customs Enforcement ("ICE") custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Petitioner argues that he is detained under 8 U.S.C. § 1226(a) rather than under § 1225(b)(2), and that his ongoing detention violates his due process rights. The Court issued an Order directing that Petitioner not be removed from this District and set a briefing schedule. Dkt. 5. Respondents filed an Opposition to the Petition, asserting that Petitioner's case is not like other recently adjudicated habeas petitions because Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(1), rather than § 1225(b)(2). Dkt. 7. Petitioner filed a Reply, reiterating his arguments that he is detained under 8 U.S.C. § 1226(a) and that his ongoing detention violates his due process rights. Dkt. 7. For the reasons set forth below, the Petition is GRANTED.

## I.　　BACKGROUND

Petitioner is a native and citizen of Honduras and first entered the United States on August 25, 2018. Dkt. 1 ¶¶ 1, 21. Petitioner was initially detained for expedited removal proceedings. *Id.* ¶ 22; Dkt. 1-2 (Form I-213). Petitioner expressed a fear of returning to Honduras and was

given a credible fear interview. Dkt. 1 ¶ 22. United States Citizenship and Immigration Services ("USCIS") found Petitioner to have a credible fear of returning to Honduras and issued Petitioner a Notice to Appear. *Id.* ¶¶ 22, 23; Dkt. 1-3 (Notice to Appear). Petitioner was transferred to full removal proceedings and released by Immigration and Customs Enforcement ("ICE") on a bond of $13,500. Dkt. 1 ¶ 24; Dkt. 1-4 (Notice of Custody Determination). Petitioner satisfied the bond and was subsequently released from custody. Dkt. 1 ¶ 24.

On November 6, 2025, Petitioner was detained by immigration officers. Dkt. 1 ¶ 26. On January 13, 2026, Petitioner attempted to participate in a custody redetermination hearing in the Annandale, Virginia Immigration Court; however, the Immigration Judge found that it "lack[ed] jurisdiction in accordance with matter of MS." Dkt. 1 ¶ 27; Dkt. 1-5 (January 13, 2026 Order of the Immigration Judge).

On January 19, 2026, Petitioner filed this Petition. Dkt. 1. On January 20, 2026, the matter was assigned to this District Judge, and, on January 21, 2026, the Court issued a briefing schedule. Dkt. 5. On January 26, 2026, Respondents filed an Opposition. Dkt. 7. On January 28, 2026, Petitioner filed a Reply. Dkt. 8. Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme

Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.   DISCUSSION

As a threshold matter, this Court has jurisdiction to consider Petitioner's habeas challenge to his detention as neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this court of jurisdiction under 28 U.S.C. § 2241 to review the legality of Petitioner's detention. *See Luna Quispe v. Crawford*, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025); *Luna Sanchez v. Bondi*, 2025 WL 3191922, at *3 & n.6 (E.D. Va. Nov. 14, 2025).

With respect to the substance of his claim, Petitioner asserts that he is being unlawfully held at Abyon-Farmville Detention Center without bond and maintains that he is detained pursuant to 8 U.S.C. § 1226.   Respondents respond that Petitioner is properly detained without bond pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) because he is an applicant for admission who was found to have a credible fear and was transferred to removal proceedings. Dkt. 7 at 8.

As the Supreme Court held in *Jennings v. Rodriguez*, § 1226(a) is the "default rule," which governs "aliens already in the country" who are subject to removal proceedings, whereas § 1225(b) governs "aliens seeking admission into the country." 583 U.S. 281, 288–89 (2018).  As relevant here, § 1225(b)(1) provides that, "[i]f an immigration officer determines that an alien who is arriving in the United States is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).  The statute further states, "[i]f an immigration officer determines that an alien who is arriving in the United States is inadmissible under

3

section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Despite the language that such alien "shall be detained," Congress has expressly authorized the Secretary of Homeland Security to, "in his discretion[,] parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Additionally, in 2005, in *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), the Board of Immigration Appeals ("BIA") held that Immigration Judges could exercise their "general custody authority" under 8 U.S.C. § 1226(a) and release individuals on bond who were initially screened for expedited removal but subsequently established a credible fear of persecution. *Id.* at 734–36. This decision was later overruled by the Attorney General in 2019, who determined that individuals transferred from expedited to standard removal proceedings are *not* eligible for bond. *See Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019).

Here, Petitioner was initially screened for expedited removal in 2018 and, after an interview with USCIS, established a credible fear of persecution. After Petitioner established a credible fear, Respondents had three options under the then-governing holding in *Matter of X-K-*: (1) continue to detain Petitioner pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), (2) release Petitioner on parole pursuant to 8 U.S.C. § 1182(d)(5)(A), or (3) release Petitioner on bond pursuant to 8 U.S.C. § 1226(a). Respondents chose to release Petitioner on bond. Dkt. 1-4. This decision under the *Matter of X-K-* framework to release Petitioner on bond supports the conclusion that Petitioner's

4

detention is governed by § 1226(a) and not § 1225(b)(1). *See, e.g., Luna Sanchez v. Bondi*, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025) (holding that "DHS's decision to release an individual on bond, as opposed to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b)."); *Chaudhari v. Crawford*, 2025 WL 3896287, at *4 (E.D. Va. Oct. 23, 2025) (finding that petitioner's detention was governed by §1226 where petitioner had established a credible fear of prosecution and was then granted bond before *Matter of M-S-* went into effect); *see also da Silva v. Bondi*, 2026 WL 193635, at *1 (W.D.N.Y. Jan. 25, 2026) ("The government claims that [petitioner] now is subject to mandatory detention under section 1225(b)(1)(A) as if its decision to release him on bond in 2016 had never happened. This Court disagrees."); *Loja v. FCI Berlin, Warden*, 2025 WL 3079160, at *2 (D.N.H. Nov. 4, 2025) (observing that, when the government elects to release a person on bond under § 1226(a), rather than humanitarian parole under § 1182(d)(5)(A), the government cannot later "turn back the clock, and neither can the Court" (quoting *De Andrade v. Moniz*, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025))).

To the extent that Respondents argue that the Attorney General's 2019 decision in *Matter of M-S-* retroactively negated Petitioner's release on bond in 2018 and governs his current detention, this argument is not well taken. As courts have held, "[e]ven assuming *arguendo* that [*Matter of M-S-* provides] the correct interpretation of the statute, the decision is silent on whether this holding applies retroactively or, as Respondent argues here, empowers DHS to re-detain previously released noncitizens without first revoking their bond." *Quinteros Moran v. Joyce*, 2025 WL 3632895, at *3 n.1 (S.D.N.Y. Dec. 15, 2025) (concluding the decision "carries minimal persuasive value"); *see also, e.g., Ahmed v. Rhoney*, 2026 WL 262553, at *2 (W.D.N.Y. Feb. 2, 2026) ("Setting aside whether *Matter of M-S-* applies retroactively or whether it is a correct

5

interpretation of the statute, it does not support the conclusion that the government can unilaterally re-detain an individual released on bond years later with no individualized hearing or demonstrated change in circumstances."); *da Silva*, 2026 WL 193635, at *2 ("Moreover, *M-S-* does not speak to the situation here where the petitioner was allowed to remain present in the United States for years before being re-detained."). Courts considering this issue have also noted that the Supreme Court's decision in "*Jennings* says nothing about whether the Government may release a noncitizen on bond pursuant to § 1226(a) and then, years later, without a demonstrated change of circumstances, re-detain that same individual under § 1225(b)(1)(B)(ii)." *Quinteros Moran*, 2025 WL 3632895, at *3.

Moreover, even if under *Matter of M-S-* Respondents can retroactively negate an individual's prior release on bond, courts have held that such an individual encountered years later within the interior of the United States would be considered detained pursuant to 8 U.S.C. § 1226(a). *See, e.g., Ahmed*, 2026 WL 262553, at *2 ("In other words, if *Matter of M-S-* truly operated to nullify Ahmed's release on bond, then he is no different than a non-citizen who is encountered within the interior of the United States after entering without inspection. And an individual like that would be considered detained under these circumstances pursuant to 8 U.S.C. § 1226(a)."). As the Supreme Court held in *Jennings*, § 1226(a) is the "default rule," which governs "aliens already in the country" who are subject to removal proceedings, whereas § 1225(b) governs "aliens seeking admission into the country." 583 U.S. at 288–89.[1] Because Petitioner entered the country in 2018, he falls into the category of "aliens already in the country" subject to

---

[1] The scheme developed by Congress, as interpreted in *Jennings*, affords more protections to aliens who make it past the border and deeper into the United States without being processed by immigration authorities than those stopped at the border. The Court finds this odd and questions the incentives that it creates.

the discretionary detention provisions in § 1226(a). *See, e.g., Singh v. Lyons, et. al.*, 2025 WL 2932635 at *4 (E.D. Va. Oct. 14, 2025) (finding that Respondents' application of § 1225(b) to individuals like Petitioner already in the country contravenes the plain text and statutory scheme of the INA, which makes clear that § 1225(b)(2)(A)'s scope extends only to those individuals actively seeking admission into the country, and not those that have already entered the county (albeit unlawfully)).

Consequently, this Court finds that Petitioner's detention is governed by 8 U.S.C. § 1226's discretionary framework, not § 1225(b)'s mandatory detention procedures. Having determined that Petitioner's detention is governed by § 1226, the Court must consider whether his current detention—after having previously been granted release on bond under § 1226(a)—is lawful.

"Under § 1226(b), DHS 'may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." U.S.C. § 1226(b). But "[t]he BIA has held that, 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)); *see also Luna Sanchez*, 2025 WL 3191922, at *4; *Chaudhari*, 2025 WL 3896287, at *4. Here, Respondents do not argue that Petitioner's bond was revoked pursuant to § 1226(b) or that there were changed circumstances justifying such revocation. Accordingly, the Court concludes that for the same reasons the court found in *Luna Quispe*, 2025 WL 2783799, at *7–9 , Petitioner's continued detention after being released on bond under § 1226(a) without a revocation of his bond under § 1226(b) violates his substantive and procedural due process rights. *See also Luna Sanchez*, 2025 WL 3191922, at *5; *Chaudhari*, 2025 WL 3896287, at *4.

For the above reasons, Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, and the Court finds that Petitioner is entitled to release under the bond previously set pursuant to § 1226(a).

## IV.    CONCLUSION

For all of the reasons above, it is hereby ORDERED that the Petition (Dkt. 1) is GRANTED; and it is

FURTHER ORDERED that Petitioner be RELEASED from custody on the bond that was set in October 2018, *see* Dkt. 1-4, no later than 12:00 p.m. on Friday, February 20, 2026, with all his personal property; and it is

FURTHER ORDERED that Respondents are ENJOINED from rearresting Petitioner, unless (1) he has committed a new violation of any federal, state, or local law, (2) he has failed to attend any properly noticed immigration or court hearing, (3) he is subject to detention pursuant to a final order of removal, or (4) the order granting bond is vacated or revoked on a ground other than that Petitioner is detained under § 1225(b)(1) or (b)(2).

The Clerk is directed to send copies of this Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
February 18, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

8